IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JALEEN F. ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 1:10-cv-445-TFM |
| ) | [wo] |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Jaleen Allen ("Plaintiff" or "Allen") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act") (Tr. 99-103) on September 21, 2006 for a period of disability which allegedly beginning December 22, 2005. (Tr. 27). Allen's application was denied and she was granted a hearing before an Administrative Law Judge ("ALJ") on July 9, 2008. The ALJ issued an unfavorable decision on August 8, 2008. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Allen timely filed her administrative appeal. The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and the parties consent to the undersigned rendering a

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

final judgment in this lawsuit pursuant to 28 U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1. For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Allen seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. BACKGROUND

Allen "sustained multiple traumatic injuries in a motor vehicle accident on December 22, 2005." (Tr. 14). Southeast Alabama Medical Center ("SAMC") "X-rays, MRI and CT scans taken immediately after the vehicle accident showed a compression fracture at L1 with mild retropuslsion of the vertebral body margin projecting into the canal about 3 millimeters, with about 50 percent vertebral body height loss: compression fractures at T3, T5 and T8 with about 5 millimeters retropulsion of vertebral body fragments at each level causing mild to moderate central stenosis; spinous fractures at T1 through T5; and multilevel spondylosis worse at L4-5 and L5-S1." *Id*.

In September 2006, Allen received a full body bone scan which showed "multilevel mild to moderate lumbar degenerative disc disease and no significant change

in the configuration of the compression fractures." *Id*. Dr. Mark Willis, M.D., a pain management specialist, treated Allen from April 2006 until April 2008 with thoracic epidural steroid injections and medications including Oxycodone, Duragesic patches, and Citralopram. *Id*. Dr. Willis notes indicate Allen has some depression and prescribed appropriate medication. Dr. Willis did not recommend outside counseling or more aggressive, specialized treatment. (Tr. 18).

In November 2006, Allen consulted psychologist Fred George, Ph.D. Dr. George's diagnosis was "Major Depression, Multiple Episodes, moderate, Posttraumatic Stress Disorder, prolonged." (Tr. 241). Dr. George's notes indicate that Allen "appeared tense and showed some pain behaviors" as well as "in both her short term memory and her activity levels." *Id*. Dr. George concludes Allen "would likely be unable to cope with job stresses and changes in a work environment, or to relate to co-workers, supervisors and members of the general public because of depression and anxiety." (Tr. 241-42).

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester*, 792 F.2d at 131).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical;

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?
(2) Is the person's impairment(s) severe?
(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

>   (4)     Is the person unable to perform his or her former occupation?
>   (5)     Is the person unable to perform any other work within the economy?
>           An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE). *Id*. at 1239-40.

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## V. STATEMENT OF THE ISSUES

Allen raises three points of error in the ALJ's decision.  (Pl. Br. at 7).  First, she asserts "[t]he Commissioner's decision should be reversed because the ALJ arbitrarily rejected the uncontroverted medical opinion of Dr. Fred George in violation of Eleventh Circuit precedent."  *Id*.  Next, Allen argues "[t]he Commissioner's decision should be reversed, because the ALJ improperly rejected Ms. Allen's testimony concerning the pain and resulting limitations imposed by the combination of her medically determinable impairments."  *Id*.  Finally, Allen argues "[t]he Commissioner's decision should be reversed, because the VE's testimony conflicts with the Dictionary of Occupational Titles and the conflict was not resolved during the hearing."  *Id*. (emphasis in original text).  The issues and arguments Allen raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

### A.  Whether the ALJ erred in rejecting the medical opinion of Dr. Fred George.

The ALJ did not err in his treatment of Dr. George's medical opinion.  An ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Williams v. Astrue*, 416 Fed. Appx 861, 863 (N.D. Fla. 2011) (quoting *Sharfarz v. Bowne*, 825 F.2d 278, 280 (11th Cir. 1987)).  That an ALJ discredits the opinion of a consulting physician, or even that of a treating physician for good cause is not error.  *Phillips*, 357 F.3d at 1241; *Lewis*, 125 F.3d at 1439-41.  Scrutiny of the evidentiary record compels this Court to conclude that the ALJ did not err in according less weight to the opinion of Dr. George about Allen's mental health and functional limitations.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *Phillips*, 357 F.3d at 1241.  Good cause exists if the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  *Id.* at 1241-42.  The ALJ must give "explicit and adequate reasons for rejecting the opinion of a *treating physician*."  *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment

relationship; the medical evidence supporting the opinion; consistency with the record a whole; specialization in the medical issues at issue; other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527. After a thorough review of the medical records and the opinion of the ALJ, the Court concludes that Dr. George was a consultative physician and not the treating physician. (Tr. 14). Scrutiny of Dr. George's lone evaluation of Allen compels this Court to find sufficient cause for the ALJ to rejection the mental health assessment of Dr. George as well as opinion about Allen's ability to perform the required duties of any kind of employment. *See Phillips*, 357 F.3d at 1241; *see also Heppell-Libsansky v. Comm'r of Social Security*, 170 Fed. Appx. 693 (11th Cir. 2006) (ALJ did not err in refusing to accord controlling weight to treating physician's opinion because physician only saw claimant twice after the alleged onset date and other evidence in record showed periods of improvement). Consequently Dr. George's opinion is not entitled to be given controlling weight. *See* 20 C.F.R. § 404.1527.

Even if the Court were to hold Dr. George was a treating physician, the Eleventh Circuit previously held that an ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). The record is clear that the ALJ considered the evidence from a State agency psychiatrist, Dr. Frank Nuckols, M.D., who said Dr. George's opinions were "not fully supported by the other evidence in this claim." (Tr. 267). The Commissioner notes that "[f]indings of

fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individuals impairments must be treated as expert opinion evidence of nonexamining sources." (Resp. Br. 5). (citing Social Security Ruling (SSR) 96-6, 1996 WL 374180, at *1.). The ALJ noted that Dr. George conducted one evaluation and that much of his opinion was controverted by Dr. Nuckols. (Tr. 267). The ALJ also noted several divergences between Dr. George's opinion and that of the other medical records plus the testimony given by Allen. (Tr. 16). Allen testified about her ability to care for herself without assistance. For instance Allen said she can shop, plan, clean, prepare meals and other such activities. (Tr. 131-33). The ALJ noted that "[Dr. George's] report and the claimant's testimony suggest that limitations are primarily attributable to physical rather than mental symptomology." (Tr. 16). The Court finds that the ALJ's conclusions regarding Dr. George's opinion is properly supported by law and substantial evidence. As such, there is no error on the part of the Commission.

**B.      Whether the ALJ erred in rejecting Ms. Allen's testimony concerning the pain and resulting limitations imposed by the combination of her medically determinable impairments**.

The ALJ did not err in rejecting Allen's testimony. The Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'"

*Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561. In *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983), the Eleventh Circuit held "this circuit does not require an explicit finding as to credibility," but will accept the implications which are obvious to the reviewing court. It is the duty of the ALJ to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). The burden of proving disability still rests on the claimant, and the claimant is responsible for producing evidence that supports her claim and allows the ALJ and the Commissioner to reach the proper conclusion. *Id*. at 1276; 20 C.F.R. § 416.912(a). If a claimant is represented by counsel, the ALJ does not have a heightened duty to develop the record. *Leiter*, 377 Fed. Appx. at 949. Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d 1050).

    The Court recognizes that "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer*, 395 F.3d at 1210; *see also Mixon v. Astrue*, 2011 WL 867213, *6 (M.D. Ala. 2011) (quoting *Dyer* ). "[T]hough the ALJ did not specifically reference the reports, his statement that his findings were made after consideration of the entire record are sufficient to support this Court's finding that he did, in fact, consider the information." *Mixon,* 2011 WL 867213, *6. When the Court, after reviewing the entirety of the record of proceedings, is able to determine that the ALJ considered Allen's medical condition as a whole it is then considered to be substantially

supported and is not the perview of the Court to simply overrule the ALJ's decision. *Newsom ex rel. Bell. v. Barnhart*, 444 F.Supp.2d 1195, 1197-98 (M.D. Ala. 2006) (quoting *Dyer*, 395 F.3d at 1211). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

The Court holds that the ALJ explicitly detailed why he chose to discredit Allen's subjective testimony in compliance with Eleventh Circuit law. (Tr. 17). The ALJ stated specifically that the Plaintiff's subjective complaints were considered and found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." *Id.*[6]

The Court recognizes that the ALJ may use its discretion to apply the amount of credit to the Allen's testimony of pain and other symptoms so long as the ALJ articulates the reasons for that decision. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (wherein the court held that because the ALJ did not set out why the testimony was

---

[6] The ALJ further explains the inconsistencies of Allen's testimony itself as well as compared to the other medical records provided. Specifically the ALJ looks to the treatment notes that state the severity of claimant's residual pain is "mild and duration is variable. The ALJ also notes that the record is sufficient to convince that the claimant's pain is adequately controlled and that Allen is able to enjoy sedentary activities consistent with sedentary work. Finally, the ALJ notes that Allen stated that the depression is not preventing her from working.

discredited, the complainant's testimony was held to be true).  When using his discretion, the ALJ must articulate the reasons for discrediting the witnesses testimony. *See Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that the ALJ must give reasons that are based on substantial evidence if they chose to discredit the claimant's testimony).  The ALJ discussed the inconsistencies within the medical records as well as found that Allen's "daily activities also suggest capability to perform significant work activity" as well as a functional capacity evaluation "demonstrated ability to perform the physical demands of sedentary to light work.  (Tr. 18).

   The Court finds that the ALJ gave sufficient weight and consideration to all evidence in accordance with 20 C.F.R § 404.1529 and SSR 96-7p, as well as giving sufficient reasoning within the opinion as to why the ALJ chose not to credit Allen's testimony.  *See Holt*, 921 F.2d at 1223.

**C.     Whether the Commissioner erred because the VE's testimony conflicts with the <u>Dictionary of Occupational Titles</u> and the conflict was not allegedly resolved during the hearing**.

   The ALJ correctly resolve the conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").  The ALJ recognizes that "[t]he vocational expert's testimony deviates from the information contained in the Dictionary of Occupational Titles with regard to the skill level of the receptionist and office clerk jobs." (Tr. 19).  However this Court finds that the conflict was in fact resolved during the hearing, despite the allegations to the contrary by Allen.

In *Jones v. Apfel,* the court addressed the issues surrounding conflicts between the DOT and the testimony of a VE. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (The ALJ relied upon VE testimony regarding the range of sedentary work available to the plaintiff, even those that conflicted with the DOT, while considering the specific limitations of the plaintiff). The Eleventh Circuit noted that in the Sixth Circuit the "social security regulations do not require the Commissioner or the VE to rely on classifications in the DOT." *Id*. (citing *Con v. Sec'y of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). This frees courts to rely on the VE's testimony "even if it is inconsistent with the DOT." *Id*. The Eleventh Circuit also noted that the Eighth and the Ninth Circuits "hold that the DOT controls unless it can be 'rebutted ... with VE testimony that shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'" *Id*. (quoting *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Circ. 1995) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). If the VE can "determine whether there are jobs in the region which the claimant can perform with [their] precise disabilities or limitations" the court then held that "the DOT *does not control*." *Id*.(citing *Montgomery*, 69 F.3d at 277) (emphasis added).

Subsequent to the *Jones v Apfel,* the Social Security Administration passed *SSR 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*. In the pertinent history of this administrative regulation it states that, "[q]uestions have arisen about how we ensure that

conflicts between occupational evidence provided by a VE or a VS and information in the DOT [] are resolved." SSR 00-4p. "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Leonard v. Astrue*, 487 F.Supp.2d 1333, 1339 (M.D. Fla. 2007) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990) (quoting 20 C.F.R. § 422.408)(1989)).

*Leonard v. Astrue*, arose after both the *Jones v. Apfel,* case as well as the issuance of SSR 00-4p. *Id.* In *Leonard*, the plaintiff argued that because SSR 00-4p was enacted after the *Jones* opinion that the new law "requires the ALJ to elicit a 'reasonable explanation" for a conflict between the VE testimony and the DOT." *Id.* at 1338. The court noted that in SSR 00-4p "the Social Security Administration recognized that the VE's testimony should generally be consistent with the information contained in the DOT" but when a conflict between the two arises that "the SSR directs that the ALJ 'must elicit a reasonable explanation for the conflict before relying on the VE['s testimony].'" *Id*. at 1338-39. "Moreover, the ALJ is obligated to inquire on the record as to whether there are any inconsistencies between a VE's testimony and the DOT." *Id*. at 1339. Finally, any conflict must be addressed and resolved by the adjudicator and explained how the conflict was resolved. *Id*.

The ALJ and the VE discussed multiple deviations in Allen's case. (Tr. 57-62). The VE recognized to the ALJ that there would be deviations and explained the reasoning and

rationale behind each deviation. *Id*. The ALJ made specific inquiries on each deviation with questions such as:

> Q. Okay, so the deviation is that this job as a production assembler in the DOT is classified as light, but you are aware of sedentary jobs in the same classification?
> A. That's correct.

(Tr. 58). The VE explained that he was basing his analysis on "Occupational Employment Quarterly 2008" which was current at the time of the hearing. (Tr. 58). At each deviation the VE would clearly state something to the effect of "I'm going to deviate now from the DOT, and I'm going to provide the numbers from the Occupational Employment Quarterly." *Id*. The ALJ also asked hypothetical scenario questions based on these deviations. (Tr. 57-62). Through the detailed examination of the VE, as well as the specific questions from the ALJ, the conflict was resolved and explained to all the parties. The ALJ did not assume the that the VE's testimony "trumps" the DOT in this conflict, but rather applied the greater scrutiny of the SSR 00-4p. *See Leonard,* 487 F.Supp.2d at 1338-39. At the hearing, Allen's counsel was provided the opportunity to ask any questions related to the deviations, or any other subject, and asked no questions regarding the deviations or the rationale behind the use of the Occupational Employment Quarterly. (Tr. 61-63).

In *Leonard*, "the ALJ did not acknowledge the apparent conflict between the VE's testimony and the DOT." *Leonard*, 487 F.Supp.2d at 1340. Due to this fault in questioning, the case was remanded to resolve the existing conflict. *Id*. Such is not the case in the matter here. While a conflict existed between the VE's testimony and the DOT, there was more

than ample questioning and explanations as to why the deviation existed as well as the rational behind the ALJ's decision. (Tr. 57-62). The Court finds that there is no reversible error.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED. A separate judgment will be entered.

DONE this the 31st day of August, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE